IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SUMIT GARG,            :   No. 3:25cv2005
                       :
         Petitioner    :   (Judge Munley)
                       :
    v.                 :
                       :
WARDEN J. GREENE,      :
                       :
         Respondent    :
............................................................................................

# MEMORANDUM

Petitioner Sumit Garg ("Garg") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Garg asserts that his due process rights were violated in the context of a prison disciplinary hearing, and that the Federal Bureau of Prisons ("BOP") failed to timely start the accumulation of his First Step Act ("FSA") time credits, and he seeks credits purportedly owed to him by the BOP. (Docs. 1, 2). The petition is ripe for disposition and, for the reasons set forth below, the petition will be denied and dismissed.

I.  **Background**

   A.  Garg's Criminal Conviction

Garg is serving a 108-month term of imprisonment for cyberstalking, conspiracy to engage in cyberstalking, and cyberstalking in violation of a criminal order, imposed by the United States District Court for the Western District of

Washington. (Doc. 8-3, Public Information Inmate Data; Doc. 21-4, Public Information Inmate Data). According to BOP documentation submitted by respondent, Garg was sentenced on July 9, 2024, and his projected release date, via FSA release, is June 8, 2028. (Doc. 21-2, Second Supplemental Declaration of BOP Attorney Jennifer Knepper ("Knepper Second Supplemental Decl.") ¶ 3; Doc. 21-3, FSA Time Credit Assessment; Doc. 21-4). However, a review of the BOP's inmate locator indicates that Garg's projected release date is now May 9, 2028.[1]

B. BOP Disciplinary Process

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b). Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the

---

[1] See FEDERAL BUREAU OF PRISONS' INMATE LOCATOR, https://www.bop.gov/inmateloc/ (searching Inmate Number 33491-509) (last visited Jan. 30, 2026).

UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. Id. Greatest Severity category offenses carry a possible sanction of, inter alia, loss of good conduct time credits. Id. § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. Id. § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. Id. § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." Id. § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. Id. § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." Id. § 541.8(e). The DHO must "consider all evidence presented during the hearing." Id. § 541.8(f). "The DHO's decision will be based

3

on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." Id. The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. Id. § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. Id. § 541.8(f)(2). A copy must be delivered to the inmate. Id.

  C. Incident Report Number 4083418

On March 13, 2025, staff was monitoring a phone call placed by Garg to a phone number listed in his contacts as a "friend." (Doc. 8-5, Declaration of DHO David Lupotsky ("Lupotsky Decl.") ¶ 4; Doc. 8-6, Incident Report No. 4083418). While monitoring the phone call, staff noticed that the voice changed after the call was placed and the individual began speaking in another language. (Doc. 8-6, at 1). Further investigation revealed that Garg placed the call on his account, completed the voice recognition, and then handed the phone to another inmate— Tumanyan (Garg's cellmate). (Id.). Staff then reviewed institutional video of the area where Garg placed the phone call. (Id.). Still photographs from the video showed that Garg was on the phone, he placed the phone down, and inmate Tumanyan picked up the receiver and completed the phone call using Garg's phone minutes. (Id.). The investigation also revealed that Garg allowed inmate

4

Tumanyan to use his phone on 16 different occasions from February 18, 2025 to March 13, 2025. (Id.).

As a result, on March 14, 2025, Garg received Incident Report Number 4083418, charging him with violating Prohibited Act Code 297—phone abuse to disrupt monitoring. (Doc. 8-6, Incident Report). On that same day, Garg appeared before the UDC and provided a written statement. (Id. at 2, 4). The UDC found the incident report to be accurate for the charges. (Id. at 2).

On March 14, 2025, a staff member informed Garg of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 8-6, at 6, Inmate Rights at Discipline Hearing). Garg was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Id. at 5, Notice of Discipline Hearing before the DHO). Garg signed both forms, he requested representation by a staff member and elected to call witnesses on his behalf. (Id. at 5-6).

The DHO hearing convened on May 1, 2025. (Doc. 8-7, DHO Report). During the May 1, 2025 hearing, the DHO confirmed that Garg received advanced written notice of the charges and that he had been advised of his rights before the DHO. (Id. at 2). Garg waived his right to representation by a staff member, waived his right to call witnesses on his behalf, and expressed an understanding of his rights before the DHO. (Id. at 1-3). He provided the

5

following statement: "I let my celly use my phone. I didn't get this incident report here and I think it should be a code 397 instead of code 297." (Id. at 2). Garg cited no procedural issues and offered no additional documentary evidence. (Id.).

The DHO ultimately found sufficient evidence that Garg committed the code 297 violation, and reasoned as follows:

> The DHO considered your statements and defense, your documentary evidence, some facts, and the evidence presented. The DHO concludes. You allowed another inmate to utilize your phone account. This was evidenced by staff observing another inmate talking on the phone using your phone account via video review. There are still photo[ ]s showing this interaction. There is a staff memorandum supporting this incident occurred as written. There are TRUSYSTEM documents corroborating this incident report and you admitted doing this. You disagreed with the charge code of 297 and stated that you believe what you did constitutes a code 397. You argued that what you did does not circumvent monitoring procedures. Your documentary evidence which you submitted does not contain any exculpatory evidence related to this case. Instead, it consists of arguments and opinions to include your request to have the charge amended to code 499 which you stated that you would plead guilty to. The DHO disagrees with your rationale and denied your request to amend the charge. Allowing another inmate to use your phone account absolutely circumvents the phone system procedures as outlined in policy. You provided the DHO with no substantive evidence to support that you did not commit the act of phone abuse.
>
> Based on the greater weight of the evidence outlined above, the DHO finds that you have committed the prohibited act of, use of the telephone for abuse other than criminal activity, code 297.

(Id. at 4).

The finding of guilt for the code 297 violation resulted in disallowance of 27 days of good conduct time and loss of phone privileges for six months. (Id.). The DHO cited the following reasons for imposition of the sanctions:

> The action/behavior of any inmate to use the telephone in an unauthorized manner interferes with the ability of the staff to accurately monitor telephone conversations and poses a serious threat to the security and orderly operation of the institution. The disallowance of good conduct time was imposed because you were sentenced under the Prison Litigation Reform Act (PLRA) which mandates the disallowance of good conduct time per policy. The loss of phone sanction was imposed to deter misconduct.

(Id. at 4-5).

At the conclusion of the hearing, the DHO advised Garg of his appeal rights, and a copy of the report was delivered to Garg. (Id. at 5).

D.   The First Step Act

With the enactment of the FSA, Congress charged the Attorney General with creating a risk and needs assessment system that would be used to: (1) determine each prisoner's recidivism risk as part of the intake process; (2) assess the risk of violent or serious misconduct of each prisoner; (3) individually assign appropriate programming for each prisoner; (4) periodically reassess prisoners' recidivism risk; (5) reassign programming based on new assessments; (6) provide incentives and rewards for participation; (7) determine when a prisoner may transfer to prerelease custody or supervised release; and (8)

7

determine appropriate use of technology for those with dyslexia. 18 U.S.C. § 3632(a)(1)-(8).

The FSA also provides that a prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities shall earn time credits ...." 18 U.S.C. § 3632(d)(4). Under the statute, prisoners earn 10 days of credits for every 30 days of "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). The number of credits earned in each period of 30 days may increase if the prisoner maintains a low risk level. 18 U.S.C. § 3632(d)(4)(A)(ii). However, a prisoner cannot earn time credits for successful completion of programming "(i) prior to the date of enactment of [the First Step Act]; or (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B). Congress has unambiguously defined "commence" in the context of federal prison sentences. According to 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

The BOP regulation that specifies when an eligible inmate may begin earning FSA time credits, 28 C.F.R. § 523.42(a), provides: "An eligible inmate

8

begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." Id. An inmate must also be "successfully participating" in designated programming to earn FSA time credits. 28 C.F.R. § 523.41(c)(1). "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." Id. § 523.41(c)(2). Additionally, in order to be considered to be successfully completing recidivism reduction programs sufficient to earn or apply credits under the FSA, a prisoner may not "opt out" of participating in the programs provided by the BOP. See id. § 523.41(c)(2)-(4). An inmate who "opts out" of a recommended recidivism reduction program is "exclu[ded] from further benefits or privileges allowable under the FSA, until the date the inmate 'opts in' (chooses to participate in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, as documented by staff)." Id. § 523.41(c)(5)(iii).

## II. **Discussion**

### A. Due Process Claim

Garg claims that his due process rights were violated in the context of the disciplinary hearing process because "the disciplinary conviction was not supported by 'some evidence.'" (Doc. 2, at 3). The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall...be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Not every prison disciplinary action is subject to procedural due process requirements; due process rights attach only where a protected liberty interest is implicated. See Sandin v. Conner, 515 U.S. 472, 484-87 (1995); Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected interest"). Prisoners have a protected liberty interest in good conduct time. See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). Conversely, no liberty interest attaches to lesser disciplinary sanctions, such as periods of disciplinary segregation or denial of other privileges. See, e.g., Sandin, 515 U.S. at 484-87 (30 days of disciplinary segregation and a temporary denial of privileges do not give rise to a protected liberty interest). "Discipline by prison officials in response to a wide range of misconduct falls

within the expected perimeters of the sentence imposed by a court of law." Id. at 485.

Where due process applies to a prison disciplinary action, a prisoner must receive: (1) at least 24-hour advance written notice of the claimed violation; (2) an impartial hearing body; (3) a written statement by a factfinder regarding the evidence relied upon and the reasons for the discipline imposed; (4) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) the ability to seek help from a fellow inmate or from the staff where the matter is complex. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974). Disciplinary proceedings are not criminal prosecutions, and the institutional needs of the prison further support some limitations upon the prisoner's rights. Id. at 555-56 ("Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen.").

Determining whether prison disciplinary proceedings comply with due process "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weight of the evidence." Hill, 472 U.S. 445, 455. Rather, the relevant question is whether there is "any evidence in the record that could support the conclusion reached" by the factfinder. Id. at 455-56. The "any evidence" standard requires only "some evidence from which

the conclusion of the administrative tribunal could be deduced." Id. (citing Vajtauer v. Comm'r of Immigration, 273 U.S. 103, 106 (1927)). A prison guard's testimony and written report are sufficient evidence to satisfy due process requirements applicable to DHO hearings. Hill, 472 U.S. at 456.

Here, the record confirms that Garg was afforded all of the required procedural rights set forth in Wolff. He received the incident report on March 14, 2025. He appeared before the UDC. He was properly informed of his rights before the DHO hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. At the conclusion of the hearing, Garg received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Garg was also notified of his right to appeal.

Garg argues that the DHO found him guilty of phone abuse (code 297) instead of phone abuse (code 397), an act, he claims he was not originally charged with. (Doc. 1, at 2; Doc. 2, at 2-3; Doc. 2-1; Doc. 14). BOP policy, as codified at 28 C.F.R. § 541.8(a)(1), provides that the DHO may find that an inmate "committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report."

According to BOP Program Statement 5270.09, Inmate Discipline Program, code 297 is described as: "[use] of the telephone for abuses other than illegal

activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act." Inmate Disciple Program, BOP Program Statement No. 5270.09, at 48, available at: https://www.bop.gov/policy/progstat/5270_009.pdf. (last visited Jan. 30, 2026). Code 397 is described as: "[u]se of the telephone for abuses other than illegal activity which do not circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a Moderate category prohibited act." Id. at 53. The DHO found that when Garg allowed another inmate to utilize his phone account, he circumvented the ability of staff to monitor his telephone use, including the content of his call and the number he called. (Doc. 8-7). Thus, the record clearly reveals the existence of sufficient evidence to allow the DHO to conclude that the greater weight of the evidence supported that Garg had committed the prohibited act of telephone abuse, in violation of code 297. (Id.).

Since Garg was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. The record clearly reveals the existence of some evidence to allow the DHO to conclude that Garg was guilty of the charge. In concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the incident report, staff memorandum, still photos showing Garg placing the phone

call, setting down the receiver, and allowing another to pick up the phone. (Doc. 8-7, at 3-4). The DHO's reliance on this documentary evidence supports a conclusion that the decision has some basis in fact and is supported by some evidence.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, et seq. Garg was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- B.2 Forfeit up to 27 days of earned FSA Time Credits for each prohibited act committed.
- C. Disciplinary segregation (up to 6 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job.
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO were consistent with the severity level of the prohibited acts and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006) (citing Rummel v. Estelle, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) (citing Sandin, 515 U.S. at 484). The penalties imposed here, loss of good conduct time and loss of phone privileges, do not work an "atypical and significant hardship" on Garg and do not serve to extend his confinement beyond the expected parameters of his sentence.[2] Sandin, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

B.     Equal Protection Claim

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." Washington v. Davis, 426 U.S. 229, 239 (1976). In order to establish an equal protection claim, a litigant "must

---

[2] As stated, Garg's projected release date is May 9, 2028. See FEDERAL BUREAU OF PRISONS' INMATE LOCATOR, https://www.bop.gov/inmateloc/.

15

allege that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class..." Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016).

Garg alleges that he was treated differently from other similarly situated inmates—he alleges that his cellmate used his account to place a phone call, and his cellmate received a lighter sanction. (Doc. 2, at 3). Garg does not allege that he is a member of a protected class, as required for an equal protection claim, nor could he because prisoners are not a suspect class under equal protection principles. See Myrie v. Comm'r, N.J. Dep't of Corr., 267 F.3d 251, 263 (3d Cir. 2001). Merely claiming that other prisoners received less severe punishment for the same violation does not create an equal protection claim. See Millard v. Hufford, 415 F. App'x 348 (3d Cir. 2011).

Additionally, the record is devoid of proof that Garg received a more severe sanction that his cellmate. DHO Lupotsky attests that, upon review of Garg's cellmate's disciplinary history, he was also charged with a violation of code 297 and received a disallowance of 27 days of good conduct time and 90 days loss of e-mail and commissary privileges. (Doc. 8-5, Lupotsky Decl. ¶ 10). The record does not support a finding that BOP officials engaged in purposeful discrimination. Rather, the record shows that the discipline imposed on Garg

16

was based on evidence that he violated the BOP's rules. Accordingly, Garg's equal protection claim fails.

C. <u>The BOP's Calculation of Garg's FSA Time Credits</u>

Garg seeks the award of earned time credits under the FSA and requests that the BOP recalculate his release date. (Doc. 2, at 4-5; Doc. 2-2; Doc. 13, at 1). In response, respondent has recalculated the application of Garg's FSA time credits and has applied those credits to Garg's sentence. (Doc. 21-3).

Respondent asserts that the most recent FSA Time Credit Assessment (dated December 24, 2025), shows that Garg <u>is</u> eligible for application of FSA time credits as of the December 24, 2025 assessment date and, thus, 155 days of FSA time credits have been applied to his sentence. (Doc. 21, at 1-3; Doc. 21-2, Knepper Second Supplemental Decl. ¶¶ 2-3; Doc. 21-3). Respondent argues, therefore, that the habeas petition is now moot because Garg has received the relief sought and has received the maximum allowable credit. (Doc. 21, at 1-5).

Article III of the Constitution dictates that a federal court may adjudicate "'only actual, ongoing cases or controversies.'" <u>Burkey v. Marberry</u>, 556 F.3d 142, 147 (3d Cir. 2009) (quoting <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990)). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings [and for jurisdiction to exist the] parties must

continue to have a 'personal stake in the outcome' of the lawsuit." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477-78).

Here, Garg's request for additional credits under the FSA became moot when the BOP recalculated his FSA time credits and applied those credits to his sentence. Based on the BOP's revised calculations, the BOP applied 155 days towards Garg's release date and his projected release date changed from November 10, 2028 to May 9, 2028. (Compare Doc. 8-3, 8-4, with, Docs. 21-3, 24-1; see also BOP INMATE LOCATOR).

As Garg has received the requested relief—recalculation of his FSA time credits—he no longer has a concrete, redressable injury. This court therefore lacks an opportunity to provide Garg with any meaningful relief in this habeas matter, and his challenge is moot. See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").

### III. Conclusion

Consistent with the foregoing, the habeas petition challenging the prison disciplinary hearing will be denied, and the habeas petition challenging Garg's FSA time credits will be dismissed as moot.

An appropriate order shall issue.

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court

Dated:    January 30, 2026